United States District Court
Southern District of Texas
**ENTERED**
April 16, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FANNIE MAE,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:22-CV-3901 |
| NELSON BROTHERS PROFESSIONAL<br>REAL ESTATE, LLC, BRIAN NELSON,<br>and PATRICK NELSON,<br>*Defendants*. | §<br>§<br>§<br>§<br>§ | |

**ORDER**

Before the Court is the Motion for Partial Summary Judgment filed by Plaintiff Fannie Mae against all Defendants. (Doc. No. 29). Defendants Nelson Brothers Professional Real Estate, LLC ("NBPRE") and Brian Nelson ("Brian") have filed a response in opposition (Doc. No. 39), as has Defendant Patrick Nelson ("Patrick") (Doc. No. 38). Plaintiff has filed a joint reply to the responses. (Doc. No. 44). Cross-Plaintiffs NBPRE and Brian have also filed a Motion for Partial Summary Judgment (Doc. No. 31) to which Fannie Mae responded (Doc. No. 35).

**I.   Background**

Most of the facts of this case are undisputed. The controversy between the parties initially emanates from a loan made by Plaintiff's predecessors to NB Vue Mac, DST ("Vue Mac" or "Borrower"). The Defendants in this case guaranteed this loan in writing. The loan in question was documented by a "Multifamily Loan and Security Agreement" and a "Multifamily Note." The original lender was Berkeley Point Capital, LLC. The note originated on December 18, 2015, and was in the amount of $23,265,000.00. The Borrower granted a deed of trust and various assignments over the real property and improvements (115 furnished and unfurnished apartments) located at 4460 S. MacGregor Way near the University of Houston (hereinafter, the "Property").

The Defendants herein guaranteed the full repayments of the loan proceeds.[1] Eventually, all of these obligations were assigned to Plaintiff.

In April 2020, the Borrower began to miss payments. Fannie Mae and the Borrower entered into a forbearance agreement the next month; however, the Borrower continued to miss payments. In November 2020, they entered into a Modification Agreement which had the effect of Fannie Mae rescinding the loan acceleration and reinstating the original note amounts. Nevertheless, the Borrower still missed payments and finally a Second Loan Modification was entered into in January 2021.

The Borrower continued to default and finally in May 2021 Fannie Mae notified all directly concerned that the loan was due immediately and that it was going to foreclose. Fannie Mae began foreclosure proceedings, and the foreclosure was set for July 6, 2021. To avoid foreclosure, the Borrower filed for bankruptcy in the Southern District of Texas. After several months of proceedings, the Bankruptcy Court lifted the automatic stay and allowed the foreclosure to go forward. That foreclosure occurred in January 2022 and, after applying a credit for what Fannie Mae received, a debt of $12,565,228.69 remained.

This lawsuit was filed by Plaintiff to recover that amount.

**II.     Controlling Summary Judgment Principles**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

---

[1] In one of his latest filings, Patrick suggests that his signature was forged on this Guaranty. The Court will address that argument later in this order.

Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the Court should not grant the motion. *Celotex Corp.*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

### III. The Motions for Summary Judgment

Fannie Mae's claims are straightforward. Fannie Mae seeks to enforce the Guaranty in an amount that would make it whole. Patrick Nelson's response is somewhat interesting. First, he explains the reason the Borrower could not repay its debt was that COVID-19 had undermined its tenant base. Second, he maintains that the Borrower made over $1,000,000 in payments to Fannie Mae after the Second Loan Modification and that those payments wiped out all of its cash reserves. Finally, when Fannie Mae insisted on a payment of $1.4 million (representing all past due principal and interest payments, default interest, legal fees, and deferred amounts), Vue Mac decided it needed to file for bankruptcy.

Patrick is now denying he signed the Guaranty despite the fact he admitted that he did in his answers to requests for admission. While now claiming that he did not sign the Guaranty to the Plaintiff that is at issue in this case, he has not made such a claim as to the indemnity agreements that are the basis of the cross-action against him by NBPRE and Brian.

NBPRE and Brian contend that, as to them, Fannie Mae's claims as put forth in its Motion for Partial Summary Judgment are barred by the doctrine of "unclean hands." This somewhat

tortured argument is based upon the business divorce between Brian and Patrick—a transaction to which Plaintiff was neither a party nor a signatory.

Brian and NBPRE argue that the loan in question was for the Property on MacGregor Avenue in Houston. This fact seems undisputed. In fact, the actual borrower was NB Vue Mac, DST—a Delaware Statutory Trust. The primary collateral was the property itself; however, Brian, Patrick, and NBPRE all signed the Guaranty. In 2018, the Nelson brothers had a falling out. Together, they owned three companies: NBPRE, Nelson Brothers Property Management, Inc., and Nelson Brothers Construction Management, LLC. Through these various entities they controlled any number of properties—including the one on MacGregor Avenue in Houston.

In April 2018 due to the ongoing problems between the brothers, they divided up the assets apparently pursuant to some kind of draft process. Brian received NBPRE and Patrick took control of Nelson Brothers Property Management, Inc. and Nelson Brothers Construction Management, LLC. This division was documented by a Partial Award signed by an arbitrator on April 16, 2018. As a result of this award, Patrick received and took control of the Property that is the subject matter of the loan at issue here. The brothers continued to be at odds. These disputes were ultimately resolved by a final arbitration award three years later in April 2021. This award, as before, left the Property under the auspices of Patrick. Ultimately, the Supreme Court of California confirmed the final arbitration award in June 2021.

Meanwhile, the Property was falling behind on its loan obligations. It was allegedly in default as early as April 2020 and ultimately went into bankruptcy in the summer of 2021. It appears from the timing that this filing was made to forestall Fannie Mae from foreclosing. Some months later, the Bankruptcy Court entered an order of Patrial Relief from the stay to allow Fannie Mae to foreclose on the property, which it ultimately completed on January 4, 2022; however, after

accounting for the process of the sale of the Vue property, a short fall of over $12 million remained. Plaintiff filed this lawsuit against the Guarantors of the loan to recover this difference.

## IV. Analysis

There are three issues presented by the two motions for partial summary judgment. First, are Brian and NBPRE liable to Plaintiff pursuant to the Guaranty they executed? Second, is Patrick liable to Plaintiff pursuant to the Guaranty he signed? Third, is Patrick liable to Brian and NBPRE to indemnify them for the sums Plaintiff is seeking to gain from them?

### 1. Brian and NBPRE Liability to Fannie Mae

The Court will first consider Brian and NBPRE's liability to Fannie Mae.

"The Texas rules for interpreting the breadth of a guaranty agreement are well-established. In construing a guaranty contract, the primary concern of the reviewing court is to ascertain the intent of the parties." *ADR Tr. Corp. v. Northpark Jt. Venture*, 958 F.2d 1313, 1320 (5th Cir. 1992) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)). If the guaranty is ambiguous, then the court must apply the construction most favorable to the guarantor. *Id.* If, however, the guaranty can be given a "certain meaning or legal interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* (citing *Coker*, 650 S.W.2d at 393).

The Guaranty provides the following:

Guarantor hereby absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of:

(a) all amounts, obligations and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement (including the payment and performance of all indemnity obligations of Borrower described in Section 3.03 (Personal Liability for Indemnity Obligations) of the Loan Agreement and including all of Borrower's obligations under the Environmental Indemnity Agreement); and

(b) all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty.

5

(Doc. No. 29-1 at 206).

Texas case law is clear that "an absolute and unconditional guaranty of a note binds the guarantor upon all terms of the note." *Hopkins v. First Nat. Bank at Brownsville*, 551 S.W.2d 343 (Tex. 1977). The Loan Agreement states the following:

> Section 3.02 Personal Liability of Borrower (Exceptions to Non-Recourse Provision)
> . . .
> (b) Full Personal Liability for Mortgage Loan
>
> Borrower shall be personally liable to Lender for the repayment of all of the Indebtedness, and the Mortgage Loan shall be fully recourse to Borrower, upon the occurrence of any of the following:
> . . .
> (4) the occurrence of any Bankruptcy Event[...]

(Doc. No. 29-1 at 21).

Fannie Mae argues that "by agreeing to full and prompt payment and performance of the Loan absolutely and unconditionally, Defendants also agreed to the full recourse exception to the Loan Agreement triggered by the Borrower's 'Bankruptcy Event.'" (Doc. No. 29 at 12).

Brian and NBPRE claim that they cannot be held liable on their Guaranty despite the occurrence of the Bankruptcy Event because the Plaintiff has "unclean hands" and because the property was assigned to Patrick in the split-up of the business. The Court addresses the last point first.

Neither Fannie Mae nor its predecessors were parties to the break-up of the business relationships of the Nelson brothers. They were not bound by their agreements or by the arbitrators' findings. Fannie Mae's rights and guarantees were not altered, nor did the business break-up alter any of the duties the brothers or NBPRE owed. The arbitration results clearly acknowledged that there were debts and guarantees outstanding to third parties that needed to be paid.

6

Moreover, the language of the Guaranty is unambiguous. The Guaranty provides that it "shall remain in full force and effect without regard to, and shall not be released, discharged, or affected in any way by any circumstance or condition…including…any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the obligations hereunder, or any termination of such relationship." (Doc. No. 1-3 at 2–3).

The breakup of Brian and Patrick did not alter their obligations to third parties and more specifically did not alter their obligations to Fannie Mae. While they can divide their assets as they may, such a division does not affect the duties they owe to third parties who are not parties to that division. Thus, the Guaranty Brian and NBPRE signed survived the various divisions and arbitrations, and they remain liable. The fact that Patrick is now claiming he did not sign the Guaranty does not help either Brian or NBPRE (even though he was allegedly in charge of Vue property on MacGregor when it defaulted and went into bankruptcy).

Brian and NBPRE also argue that Fannie Mae has "dirty hands" and thus cannot enforce the Guaranty. As a basis for these claims, they point to the facts that: (1) Fannie Mae knew of the business divorce between Brian and Patrick; (2) knew that Patrick was assuming authority over the Vue property; and (3) communicated solely with Patrick concerning the Vue property. In fact, Brian claims that he did not know about certain important aspects, such as the 2020 forbearance, until the onset of this lawsuit.

Brian further claims that he was not forewarned about the Vue Mac bankruptcy until after it was filed. That may be true, but that is not the fault of the Plaintiff. Finally, Brian claims that Fannie Mae is at fault because Fannie Mae did not reach out to him or NBPRE to discuss their Guaranty during the demise of the Vue Mac venture.

Brian and NBPRE provide general authorities as to how the common law defines the unclean hands doctrine. They have put forward no authority showing that unclean hands can apply as an affirmative defense when a party seeks relief under a contract; in fact, contrary authority exists which "is cause to doubt [Brian and NBPRE's] theory." *Claimant ID 100235033 v. BP Expl. & Prod., Inc.*, 941 F.3d 801, 811 (5th Cir. 2019). Indeed, Texas courts are clear that the affirmative defense of unclean hands is available only in equity. *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768 (5th Cir. 2010).

The contractual agreements that Brian and NBPRE agreed to provide that they: "shall remain in full force and effect without regard to, and shall not be released, discharged, or affected in any way by any circumstances or conditions…including…any change in ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the obligations hereunder, or any termination of such relationship." (Doc. No. 1-3 at 2–3). The Guaranty additionally provides it shall "remain in full force and effect without regard to … any circumstance or condition (whether or not Guarantor shall have knowledge thereof)[.]" (*Id.*).

The contract is clear: Brian and NBPRE guaranteed the performance of the loan terms regardless of any circumstance or conditions that might occur and regardless of whether they knew about these circumstances or conditions. The failure of Plaintiff to contact them and/or to agree to release them from their obligations is not bad faith and does not amount to a contractual defense—especially in light of the agreement between the Nelson brothers that Patrick would have the responsibility for the Vue Mac Project. If anything, one wonders why Brian did not keep tabs on Patrick's activities in the projects that Brian retained a financial interest or obligation.

### 2. Patrick's Liability on the Guaranty

The Court next addresses the easiest question: Patrick's liability to Fannie Mae under his own Guaranty. This Court denies the partial summary judgment because there is a fact issue as to whether Patrick signed the Guaranty in question. He has signed a sworn declaration that he did not and that his signature was forged. This is enough evidence to create a fact issue.

Having so ruled, the Court wants to make it clear that is finds this position to be quite suspect. First, Patrick did not deny that he guaranteed the loan in his answer. Common sense dictates that if one is being sued for millions of dollars pursuant to a guaranty, the first thing one would do is to review the guaranty and if that signature was not genuine—one would immediately deny it. Moreover, when directly asked via Requests for Admissions—a situation that demands straight forward responses—Patrick again admitted he signed the Guaranty.

It is no wonder Plaintiff finds this position unbelievable. The Court finds it at the very least surprising. Nevertheless, the current denial under oath does create a fact issue. Plaintiff has attempted to get around this denial by pointing to the First Forbearance and Modification Agreement and the Second Modification Agreement, both of which contain the same following paragraph:

> **Acknowledgement of Obligations by Obligors.** Obligors acknowledge and agree that the Recitals set for above are true and correct and are incorporated by reference into the body of this Agreement. Obligors acknowledge and agree that Obligors are indebted to Holder for repayment of the Loan Obligations, including all accrued interest, costs, fees (including attorneys' fees) and expenses. **Obligors hereby reaffirm and ratify the terms of the Loan Documents, as amended herein, and acknowledge that they are enforceable in accordance with their terms.** The Guaranty remain in full force and effect and the Guarantor, by signing below, hereby ratifies and affirms all terms and conditions of the Guaranty and hereby consents to all modifications and amendments to the Loan Documents described herein.

(Doc. No. 1-9 at 2; Doc. No. 1-11 at 2) (emphasis added).

While the Court understands why Fannie Mae relies upon these representations, these cannot override the current declaration before the Court. A fact issue still remains, and therefore Fannie Mae's motion for partial summary judgment is denied as to Patrick's liability on the Guaranty.

2. **Patrick's Liability to Brian and NBPRE**

While Patrick has sworn that he did not sign the Guaranty on which the Plaintiff has relied, he has not made the same claim as to the Indemnity Agreement upon which Brian and NBPRE rely. He has admitted it in his answer. He has also by virtue of his failure to respond to requests for admissions admitted to this agreement as well. Moreover, in a separate lawsuit another court in this Circuit has found the Indemnity Agreement to be a "valid, binding, and enforceable agreement." (3:21-cv-184-GHD-RP, Doc. No. 114 at 8, U.S. Dist. N.D. Miss., May 31, 2023).

That agreement states in pertinent part:

> As used in this Agreement, the terms "Patrick Nelson" and "Brian Nelson" and the terms "Party" or "Parties" include all such additional affiliated individuals and companies, and their respective successors and assigns.
>
> The Parties hereby agree that each Party (the "Indemnifying Party") [which in this case is Patrick] shall indemnify, defend and hold harmless the other Party (the "Indemnified Party") [which in this case are Brian and NBPRE] **from any and all obligations either as borrower or as guarantor, arising out of any loans entered into with respect to properties and entities awarded to the Indemnifying Party** in that Partial Final Arbitration Award (the "Partial Final Award") issued by Judge Stuart Waldrip on April 16, 2018 (the "Award Properties and Entities"). All the foregoing obligations are referred to collectively herein as the "Loan Obligations."
>
> The Parties also agree the duty of the Indemnifying Party to indemnify, defend, and hold harmless the Indemnified Party extends to the original Loan Obligations and to any extension, modification or renegotiation of such Loan Obligations, as well as all claims, debts, liabilities and judgments arising out of any Loan Obligations.
>
> Such indemnity shall include, but is not limited to:
>
> \*\*\*

(2) All court costs (or arbitration or mediation costs) and attorney's fees, expert witness fees, and expenses paid or incurred by the Indemnified Party with respect to such Loan Obligations.

(*Hold Harmless and Indemnity Agreement*, Doc. No. 31-4 at 2) (emphasis added).

This agreement is a valid and competent agreement under California law and the uncontroverted summary judgment evidence establishes Brian and NBPRE's right to indemnity under it. *See e.g.*, *Four Star Elec., Inc. v. F & H Constr.*, 7 Cal. App. 4th 1375, 1380 (1992) and the cases cited therein.

Therefore, this Court grants Cross-Complainants' Motion for Partial Summary Judgment. It rules as a matter of law that Patrick must indemnify Brian and NBPRE for all sums they must pay to Plaintiff and for all fees, expenses, and costs related to their defense of this lawsuit.

## IV. Conclusion

The Court hereby **GRANTS** the Plaintiff's Motion for Partial Summary Judgment as to Brian Nelson and Nelson Brothers Professional Real Estate LLC. (Doc. No. 29). The Court hereby **DENIES** that motion as to Patrick Nelson and it will resolve those issues as the finder of fact at trial. (*Id.*). The Motion for Partial Summary Judgment filed by Cross-Complainants Brian Nelson and Nelson Brothers Professional Real Estate LLC against Patrick Nelson is granted in its entirety. (Doc. No. 31). The parties are to jointly submit a proposed scheduling order by May 3, 2024.

SIGNED this 16th day of April, 2024.

Andrew S. Hanen
United States District Judge